# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK N. SMOYER, as Administrator for the Estate of KATHERINE E. SMOYER, Deceased, | ) ) ) | No. 2:16-cv-1696 |
| | ) | District Judge David Stewart Cercone |
| Plaintiff, | ) ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) ) | |
| | ) | ECF No. 4 |
| CARE ONE, LLC, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion to Remand (ECF No. 4) be granted and this case be remanded to the Court of Common Pleas of Westmoreland County forthwith.

### II.    REPORT

#### A.    Factual Background & Procedural History

Currently pending before the Court is Plaintiff's Motion to Remand (ECF No. 4). This state common law negligence, corporate negligence/liability, breach of fiduciary duty, and wrongful death and survivor action arises from Defendants' alleged custodial abuse and neglect of decedent Katherine Smoyer, while she was a resident of their nursing facility known as the Rehabilitation and Nursing Center of Greater Pittsburgh

(the "Facility").  Ms. Smoyer allegedly suffered severe injuries and illnesses while under Defendants' care and supervision, including a fall that resulted in an open right trimalleolar ankle fracture and dislocation requiring surgical repair, a coccyx fungal rash, and a vancomycin-resistant enterococci infection, poor hygiene, severe pain, and ultimately death.

Plaintiff, the administrator of decedent's estate, instituted this civil action on October 17, 2016, by filing a Complaint in the Court of Common Pleas of Westmoreland County, Pennsylvania ("State Court").  Subsequently, this action was timely removed to this federal court by all Defendants who were properly joined and served at the time of removal,[1] based upon diversity jurisdiction under 28 U.S.C. §1332.  *See* Notice of Removal at ¶3 (ECF No. 1).   In their Notice of Removal, the Entity Defendants state that this Court has diversity jurisdiction because the only non-diverse Defendant, Barbara Mallonee, does not appear to have been served and, in any event, is fraudulently joined in this action.   *Id.*   Because  Mallonee has been fraudulently joined, the Entity Defendants submit that  her citizenship can be disregarded for purposes of determining diversity.  *Id.* at ¶¶ 17, 24-25.

---

[1] The Defendants who joined in the removal petition include:  Care One, LLC; 890 Weatherwood Lane Operating Company, LLC, d/b/a The Rehabilitation and Nursing Center of Greater Pittsburgh; Healthbridge Management, LLC; DES Holding Co., Inc.; Care Ventures, Inc.; THCI Company, LLC; THCI Holding Company, LLC; Straus Capital Healthcare Partners (MT), LLC; Straus Capital Healthcare Partners (MT) II, LLC; Care Holdings (MT), LLC; Care Partners (MT), LLC; and Care Realty, LLC (collectively, the "Entity Defendants").

Plaintiff now seeks an order remanding this case to State Court. In support, he argues that complete diversity did not exist at the time the Notice of Removal was filed and the Entity Defendants have failed to establish that Barbara Mallonee was fraudulently joined to destroy diversity jurisdiction. As such, Plaintiff submits that this case should be remanded to State Court for lack of subject matter jurisdiction. The Court agrees with Plaintiff.

**B.**     **Legal Standard – Removal & Remand**

Section 1441 of Title 28, United States Code, governs the removal of a case to federal court. Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . , to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)* (quoting *Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)* (other citations omitted)); *Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005)*. Where a motion for remand is filed, the defendant has the burden of proving that removal was proper. *Sikirica, 416 F.3d at 219* (citing *Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)*). When a state court action has been removed to federal court based on diversity of citizenship, as in the present case, complete diversity of

citizenship of the parties must exist and none of the defendants may be a citizen of the forum state. 28 U.S.C. §1441(b); *In re Briscoe,* 448 F.3d at 215 (citation omitted).

**C.    Analysis**

In opposing remand, the Entity Defendants further expand on the arguments raised in their Notice of Removal. In particular, the Entity Defendants argue initially that the forum defendant rule in 28 U.S.C. § 1441(b)(2) does not apply, and thus remand is not required, because Barbara Mallonee was not a properly joined and served defendant at the time they filed their Notice of Removal. (Entity Defendants' Opposition to Plaintiff's Motion to Remand ("Defs. Opp'n") at 2-4, ECF No. 7). Second, the Entity Defendants argue that the Complaint fails to identify any case law or statute that imposes a duty upon nursing home administrators to the residents of the nursing home, and even if such a duty existed giving rise to a tort-based claim, the Entity Defendants maintain that Plaintiff failed to include any allegations in the Complaint that Mallonee violated the Pennsylvania Nursing Home Administrator Licensure Act, 49 Pa. Code §§ 39.91 *et seq. Id.* at 4-6. Moreover, the Entity Defendants argue that the Complaint is utterly devoid of particularized allegations against Mallonee, and instead, lumps together all of the Defendants in its "vague factual allegations." *Id.* at 6. Finally, the Entity Defendants contend that Plaintiff's reliance on the participation theory to impose liability on both the employee and employer is not supported by Pennsylvania law based on the circumstances alleged in this case. *Id.* at 7-8. As explained below, Defendants' arguments lack merit.

1.      **Forum Defendant Rule**

As Plaintiff correctly notes in his Reply Brief, the "properly joined and served"
requirement in the forum defendant rule does not come into play here because
complete diversity did not exist at the time of removal.  Section 1441(b)(2) provides:
"A civil action otherwise removable solely on the basis of the jurisdiction under section
1332(a) of this title may not be removed if any of the parties in interest properly joined
and served as defendants is a citizen of the State in which such action is brought."  28
U.S.C. §1441(b)(2).  The latter part of Section 1441(b)(2) is known as the forum
defendant rule, and prevents removal of a state case, on the basis of complete diversity,
to a jurisdiction where one of the defendants is a resident of the forum state.  The Entity
Defendants maintain that the forum defendant rule does not apply here because
Defendant Barbara Mallonee, a resident of forum state, was not "properly joined and
served" at the time of removal, and therefore, the motion to remand should be denied.
The Entity Defendants' argument misses the mark.

Whether or not Barbara Mallonee was properly joined and served prior to
removal is simply irrelevant because complete diversity did not exist at the time of
removal.  *See Cook v. Bob Evans Farms, Inc.*, Civ. A. No. 2:11-CV-01017, 2012 WL 407261,
at *4 (S.D.W.Va. Feb. 8, 2012) (finding that the service requirement of §1441(b)(2) does
not apply when a case is not "otherwise removable" under § 1332(a) because complete
diversity does not exist.) (citing 14B Charles Alan Wright & Arthur R. Miller, FEDERAL
PRACTICE AND PROCEDURE § 3723, at 650-51 (4th ed. 2009) ("Since an action is not

removable under Section 1441 unless it originally might have been brought in a federal court, it is not surprising—and the cases make clear—that the basic principles of diversity of citizenship jurisdiction, such as the requirement of complete diversity between all plaintiffs and all defendants, . . . fully apply to cases removed under Section 1441(a) and (b).") (footnotes omitted)).  *See also Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) ("[T]he fact that the resident defendant has not been *served with process* does not justify removal by the non-resident defendant" where the inclusion of the resident defendant in a non-separable controversy defeated complete diversity and thus precluded removal altogether) (emphasis added; citations omitted); *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969) ("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service.") (footnote omitted); *Pecherski v. General Motors Corp.*, 636 F.2d 1156, 1160-61 (8th Cir.1981) ( "[W]e decline to read section 1441(b) as expanding removal jurisdiction, but rather conclude that section 1441(b) did not change the removal requirement set forth in *Pullman* that a court, in determining the propriety of removal based on diversity of citizenship, must consider all named defendants, regardless of service.") (footnote omitted); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998) ("A non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. Whenever federal jurisdiction in a removal case depends upon

complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service.") (citing *Pullman*, 305 U.S. at 540-41) (other citations omitted).[2]

Here, it is clear from the Complaint, and the Entity Defendants do not dispute, that Barbara Mallonee was a resident of Pennsylvania. Plaintiff is also a resident of Pennsylvania. Thus, complete diversity did not exist at the time this action was commenced and at the time of removal, and therefore, the Entity Defendant's reliance on the forum defendant rule's "properly joined and served" requirement to defeat remand is misplaced.[3]

---

[2] The Court takes issue with the Entity Defendants' attempt to disparage Plaintiff's counsel, by accusing him of being less than truthful with the Court by "bury[ing] in a footnote his admission that Barbara Mallonee was not properly served" at the time of removal. Entity Defs.' Opp'n at 3. Not only does the case law show that service is irrelevant for the purpose of determining diversity jurisdiction, but it also shows that the Entity Defendants completely misstate the law on removal under §1441(b)(2). Neither *Copley v. Wyeth, Inc.*, Civ. A. No. 09-722, 2009 WL 1089663 (E.D.Pa. Apr. 22, 2009), *Kallman v. Aronchick*, 981 F. Supp. 2d 372 (E.D.Pa. 2013), nor *Parker Hannifin Corp. v. Federal Insurance Co.*, 23 F.Supp. 3d 588 (W.D.Pa. 2014), upon which the Entity Defendants rely, supports their position. Unlike the present case, complete diversity existed at the time of removal in all three of these cases, such that an analysis of the forum defendant rule's service requirement was necessary in *Copley* and *Parker Hannifin*. In *Kallman*, the forum defendant rule applied because one of the defendants was a resident of the forum, but because the court determined that the resident defendant was fraudulently joined, it denied the motion to remand and dismissed the resident defendant from the case. 981 F.Supp. 2d at 382.

[3] Indeed, allowing non-resident defendants to ignore unserved resident defendants for removal purposes where complete diversity is lacking would lead to absurd results—since simultaneous service upon multiple defendants is unlikely to occur, removal could be proper one day when service of non-resident, diverse defendants was completed, but improper several days later when the resident defendant has been served and complete diversity is destroyed. *See Pecherski*, 636 F.2d at 1161 n. 6.

## 2.    **Fraudulent Joinder**

In the alternative, the Entity Defendants submit that removal was proper because Plaintiff fraudulently joined Barbara Mallonee as a defendant in order to defeat diversity jurisdiction.

The doctrine of fraudulent joinder provides an exception to the requirement in Section 1441(b) that complete diversity exist and none of the defendants is a citizen of the forum state. *In re Briscoe*, 448 F.3d at 215-16 (citation omitted). In order for this exception to apply and thus provide a basis for this Court's subject matter jurisdiction, the removing party must "establish that the non-diverse [party was] 'fraudulently' named or joined solely to defeat removal jurisdiction." *Id.* at 216. If a court concludes that a party was fraudulently joined, "the court can 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Id.* (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999)). However, if the court finds that the joinder was not fraudulent and therefore it lacks subject matter jurisdiction over the removed action, the matter must be remanded to state court. *Id.* (citing 28 U.S.C. §1447(c)). In making this determination, the Court may look beyond the pleadings to identify indicia of fraudulent joinder. *Id.* at 219 (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26 (3d Cir. 1985)). However, in doing so, the court of appeals cautioned that a "district court must not step 'from the threshold jurisdictional issue into a decision on

the merits.'" *Id.* (citing *Boyer*, 913 F.2d at 112;[4] *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992)).[5]

The court of appeals has delineated the following standards to be applied in a fraudulent joinder analysis:

> [T]he removing party carries a heavy burden of persuasion in [demonstrating fraudulent joinder]. It is logical that it should have this burden, for removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.
>
> Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court....
>
> In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must assume as true all factual allegations of the complaint. It also

---

[4] In *Boyer*, the court of appeals held "that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.  Instead, that is a merits determination which must be made by the state court." 913 F.2d at 113.

[5] The Court's inquiry into a fraudulent joinder claim is less demanding than the inquiry undertaken in ruling on a motion to dismiss under Rule 12(b)(6) — "simply because a claim against a party may ultimately be dismissed for failure to state a claim does not necessarily mean that the party was fraudulently joined." *In re Diet Drugs Prods. Liab. Litig.*, 294 F.Supp. 2d 667, 673 (E.D.Pa. 2003) (citing *Batoff*, 977 F.2d at 852) (other citation omitted).

> must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.

*Id.* at 217 (quoting *Batoff*, 977 F.2d at 852).  In other words, joinder will not be considered fraudulent unless the claims against the non-diverse party can be deemed "'wholly insubstantial and frivolous'[.]"  *Id.* at 218.

As a preliminary matter, the Court notes that the Entity Defendants do not suggest that Plaintiff has falsely alleged that he and Barbara Mallonee are citizens of Pennsylvania.  *See* Notice of Removal, ¶¶ 12, 17; Compl., ¶30; Pl.'s Mot. to Remand, ¶¶ 13-14 (ECF No. 4).  Thus, "this is not a situation where 'there has been an outright fraud in the plaintiff's pleadings of jurisdictional facts.'"  *Boyer*, 913 F.2d at 111 (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)) (other citations omitted).

The Court further notes that the record does not support a finding that Plaintiff possesses no real intention in good faith to prosecute the action against the Barbara Mallonee or seek a joint judgment.  Indeed, the record shows that Plaintiff attempted service on Barbara Mallonee at the Facility—her place of employment—on October 16, 2016, while this case was still pending before the State Court, and, in fact, "Richard Leonard, Admin" at the Facility accepted service for the Facility and Mallonee.  *See* Mot. to Remand ¶4 & n. 1; Ex. C attached to Mot. to Remand, ECF No. 4-3.  From the information on the Sheriff's return of service and the representations of the Entity Defendants in the Notice of Removal filed on November 9, 2016, Plaintiff deduced that Barbara Mallonee was no longer employed at the Facility.  *Id.*  Shortly after removal,

Plaintiff obtained a summons from this Court and is in the process of perfecting service on Mallonee.[6]  *See* Pl.'s Mot. to Remand, ¶4 & n. 1.

Moreover, the allegations in the Complaint clearly indicate that Plaintiff is seeking to hold Barbara Mallonee, in her capacity as the Nursing Home Administrator ("NHA") of the Facility during decedent's residence there, "personally, jointly and vicariously liable . . . for the acts and omissions of herself and her agents, employees, servants, contractors, staff, and/or partners and all other Defendants" for her role in the care provided to decedent and the operation of the Facility.  Compl., ¶ 30.  In addition, Plaintiff asserts throughout the Complaint that the Defendants, "individually and collectively" owed duties or engaged in the alleged tortious conduct/breach of fiduciary duties.  *See* Compl., ¶¶ 31-32, 61, 89, 103, 124, & 126.  Thus, the Complaint sufficiently pleads individual liability against Defendant Mallonee.  *See Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 89 (Pa. Super. Ct. 1995) (plaintiff sufficiently pled individual liability against department store's employee where the allegations specifically identified the employee as a separate and distinct defendant and sought to hold her liable for her own alleged tortious conduct.)   In light of these allegations and Plaintiff's efforts to effectuate service, the Court finds that Plaintiff possessed a good faith intention to prosecute this action against Barbara Mallonee individually and to seek a joint judgment against her.

---

[6] The record does not indicate whether service has been effectuated on Barbara Mallonee as of the date of this R&R.

Next, the Court turns to whether the Entity Defendants have met their burden of showing that no reasonable basis in fact or colorable ground exists to support the claims for negligence, breach of fiduciary duty, and/or liability under the Pennsylvania Wrongful Death and Survival Acts, against Barbara Mallonee.   In support of Mallonee's alleged fraudulent joinder, the Entity Defendants advance several arguments which they contend show that the Complaint fails to state a viable claim against Mallonee. However, as explained below, the Court finds that the Entity Defendants have failed to meet their heavy burden.

In his motion to remand, Plaintiff submits that he has asserted a valid cause of action against Barbara Mallonee.  In support, he initially takes issue with the Entity Defendants' statement of Pennsylvania law with regard to individual employee liability.  According to Plaintiff, Pennsylvania law allows plaintiffs in a negligence action to recover from both a principal and his agent under the so-called participation theory.  The Entity Defendants disagree, arguing that Plaintiff's view of negligence is not supported by Pennsylvania law.  They contend that the participation theory cannot apply to Mallonee because she was not a corporate director or officer, and even if it did apply to employees, liability only attaches to acts of misfeasance, not mere nonfeasance. Because he has failed to plead any specific, affirmative action by Mallonee, the Entity Defendants submit that Plaintiff has failed to state a negligence claim against Mallonee.

In Pennsylvania, plaintiffs in a negligence action may recover from both a principal and his agent under the participation theory of liability.  *See Wicks v. Milzoco*

*Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983).[7]  Under the participation theory, a corporate

officer, employee or other agent "'who takes part in the commission of a tort by the

corporation is personally liable therefor.'"  *Carter*, 158 F. Supp. 3d at 300 (quoting *Wicks,*

*470 A.2d at 90*) (other citation omitted).  This is true even if the employee was acting

within the scope of her employment when she engaged in the tortious conduct.  *Id.*

(citing *Cosmos*, 660 A.2d at 88-89; *Sannuti v. Starwood Hotels & Resorts Worldwide, Inc.,*

*Civ. A. No. 14-587, 2014 WL 1515650, at \*2 (E.D.Pa. Apr. 16, 2014)*); *Hricik*, 89 F. Supp. 2d

*at 700-01* (citing *Cosmos* and *Pilot Air Freight Corp. v. Sandair, Inc.*, 118 F. Supp. 2d 557,

*564 (E.D.Pa. 2000)*).  For liability to attach under the participation theory, the employee

must have "participate[d] in the wrongful acts," a requirement that the Pennsylvania

Supreme Court has construed to allow liability for the employee's misfeasance, but not

for "mere nonfeasance."  *Wicks*, 470 A. 2d at 90 (citations omitted);  *see also Donsco*, 587

---

[7] Although *Wicks* involved corporate officers, the intermediate Pennsylvania appellate courts, as well as federal courts applying Pennsylvania law, have applied the participation theory to ordinary employees as well. *See, e.g., Pa. exrel. Corbett v. Snyder,* *977 A.2d 28, 46 (Pa. Commw. Ct. 2009)* (involving mortgage salespersons of a mortgage brokerage and investment group); *Cosmas, 660 A.2d at 89* (employee remains liable for his own torts); *Boyer, 913 F.2d at 112* ("[A] cause of action exists against employees whose fraud and misrepresentations contributed to plaintiff's damages, even if these actions were taken in the course of their employment.") (citations omitted); *Ramos v.* *Wal-Mart Stores, Inc., No. 5:16-cv-00304, ___ F. Supp. 3d ___, 2016 WL 4398286, \*3* *(E.D.Pa. Aug. 18, 2016)* (plaintiff could assert a negligence claim against store managers for alleged misfeasance under participation theory); *Reese v. Pook & Pook, LLC,* 158 F. Supp. 3d 271, 299-300 (E.D.Pa. 2016) (plaintiffs stated a plausible negligence claim against consultant/agent for auction company based on allegations of misfeasance in conducting auction); *Hricik v. Stryker Biotech, LLC,* 89 F. Supp. 3d 694, 700-01 (E.D. Pa. 2015)  (fraud and negligence claims against individual sales representatives of corporate defendant were colorable where complaint alleged sufficient acts of employees' own misfeasance, and therefore, the corporate defendant failed to meet its heavy burden of persuading the court that the non-diverse employees were fraudulently joined).

F.2d at 606 ("corporate officer is individually liable for the torts he personally commits") (citations omitted). A misfeasance means "'the doing of something which ought not to be done, something which a reasonable man would not do, or doing it in such a manner as a man of reasonable and ordinary prudence would not do it, in either case leading to mischief or injury.'" *Brindley v. Woodland Village Rest., Inc.*, 652 A.2d 865, 869-70 (Pa. Super. Ct. 1995) (quoting *Nelson v. Duquesne Light Co.*, 12 A.2d 299, 303 (Pa. 1940)). Nonfeasance, on the other hand, refers to the "omitting to do, or not doing, something which ought to be done, which a reasonable and prudent man would do[.]" *Id.* (quoting *Nelson*, 12 A.2d at 303) (internal quotation marks omitted). Here the Entity Defendants argue that Plaintiff has failed to plead any specific, affirmative action by Ms. Mallonee. The Court rejects this argument.

A close review of the Complaint reveals allegations of misfeasance by all Defendants, including Ms. Mallonee, as well as allegations of nonfeasance. Specifically, the allegations of misfeasance can be found in paragraphs 70, 103(b), (d), (f), (k), (m), (n), (o), (r), (u), (w), (y), (aa), (cc), (dd), and (ee) of the Complaint. While at first glance the allegations in the noted subparagraphs of paragraph 103 (with the exception of subparagraph (dd)) appear to describe acts of nonfeasance, those allegations can fairly be read to allege not that Defendant Mallonee failed to provide *any* care or services, but that the care and services she did provide were inadequate, insufficient, inappropriate and/or untimely. As such, in the noted subparagraphs, Plaintiff is claiming that Mallonee is "liable for 'the improper performance of an act,' not the mere 'omission of

an act which a person ought to do.'" *Ramos*, 2016 WL 4398286, at *3 (quoting *Brindley*, 652 A.2d at 868). In addition, subparagraph (dd) expressly states an act of misfeasance—grossly understaffing the Facility. Thus, the Court finds that the Complaint sufficiently pleads acts of malfeasance, and therefore, Plaintiff is not foreclosed from bringing a negligence claim against Mallonee individually for her alleged participation in the alleged acts of misfeasance.

That does not, however, end the inquiry as the parties also disagree as to whether another element of Plaintiff's negligence claim has been established. In Pennsylvania, to state a negligence cause of action:

> [A] plaintiff must allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to actual damages suffered by the plaintiff. *Bilt–Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 280 (2005). The plaintiff proves the duty and breach elements by showing that the defendant's act or omission fell below the standard of care and, therefore, increased the risk of harm to the plaintiff. *Thierfelder v. Wolfert*, 52 A.3d 1251, 1264 (Pa.2012). Once the plaintiff has carried this burden, s/he must further demonstrate the causal connection between the breach of a duty of care and the harm alleged: that the increased risk was a substantial factor in bringing about the resultant harm. *See Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1288 (1978).

*Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 596 (Pa. 2012). The parties' disagreement focuses on whether the Complaint establishes that Ms. Mallonee owed Plaintiff's decedent a duty of care. Plaintiff submits that Pennsylvania law imposes affirmative duties on nursing home administrators to ensure the safety of residents and

that the facility is adequately staffed with appropriately skilled, competent employees, citing 28 Pa. Code §201.18(e), 49 Pa. Code § 39.91(1), and *Tanay v. Encore Healthcare, LLC,* 810 F. Supp. 2d 734, 741 (E.D.Pa. 2011). Plaintiff also points to several paragraphs in the Complaint where he alleges the duties of care Defendant Mallonee owed to the residents of the Facility, including decedent. *See, e.g.,* Compl., ¶¶ 44, 93, 96, 104-05.

In response, the Entity Defendants argue that Plaintiff fails to cite to any Pennsylvania law or case suggesting that any potential fiduciary duty a nursing home may owe to its residents also extends to the personal actions of a nursing home employee. As such, the Entity Defendants submit Plaintiff cannot show that Defendant Mallonee personally owed a fiduciary duty of care to the residents of the Facility, and absent such duty, no tort exists upon which Plaintiff can advance a claim against Ms. Mallonee.[8] There are two problems with this argument. First, the Entity Defendants are impermissibly attempting to shift the burden of persuasion to the Plaintiff. Second, they ignore the possibility that under Pennsylvania common law, a nursing home administrator may owe a duty of care to the facility's residents for negligent, tortious acts.

While there is no binding Pennsylvania precedent holding that a nursing home administrator owes a duty of care to the residents of the nursing home, there is also no binding precedent to the contrary. The Pennsylvania Supreme Court's decision in

---

[8] The Court need not consider whether under Pennsylvania law a plaintiff may maintain a cause of action against a nursing home administrator for breach of fiduciary duty in light of its conclusion *infra* that Plaintiff has pled a colorable negligence claim against Ms. Mallonee.

*Scampone*, however, is instructive and provides guidance to the courts in determine

whether a nursing home and, by implication, the administrator of said nursing home

owe a duty of care to its patients/residents:

> The question of duty in tort is "a legal determination, assigned in the first instance to the trial court." *Thierfelder*, 52 A.3d at 1264 (quoting *Sharpe v. St. Luke's Hosp.*, 573 Pa. 90, 821 A.2d 1215, 1219 (2003)). We have said that, to determine whether a defendant owes a plaintiff a duty of care, this Court must consider several factors: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus v. Cohen*, 562 Pa. 547, 756 A.2d 1166, 1169 (2000).

*Id.* at 600. Thus, the *Scampone* court did not foreclose the plaintiff from maintaining a

negligence action directly against a nursing home based on a corporate negligence

theory, but rather, held that the viability of such claim depended on whether the

nursing home owed any legal duties or obligations to plaintiff's decedent. *Id.* at 607.

The supreme court remanded the case to the trial court to apply the factors outlined in

*Althaus*.

In the case at bar, the Complaint alleges that all Defendants, including Ms.

Mallonee: assumed responsibility for the decedent's total healthcare and to provide

ordinary custodial and hygiene services, and exercised complete and total control over

the healthcare of all residents of the Facility (Compl., ¶¶ 37-39); were obligated to

establish policies and procedures that ensured timely and appropriate care was

provided for the recognition and treatment of medical conditions, and to employ competent, qualified and trained staff so as to ensure that proper care, treatment and services were rendered to individuals having medical, nursing and/or custodial needs (*id.* at ¶¶44, 46); were obligated to maintain and manage the Facility with adequate staff and sufficient resources to ensure the timely recognition and appropriate treatment of the medical, nursing and/or custodial needs of the residents (*id.* at ¶47); owed a non-delegable duty to provide adequate and appropriate medical, skilled nursing, rehabilitation, therapy and custodial care services and supervision to decedent and the other residents as would be provided by reasonable caregivers under similar circumstances, to hire, train, and supervise their employees to ensure that the Facility was operated and services provided in a safe and reasonable manner (*id.* at ¶¶ 92-93); owed a duty of care, by and through their employees, agents and/or servants, to decedent to exercise the appropriate skill and care of licensed physicians, nurses, nurse aides, directors of nursing, and/or nursing home administrators (*id.* at ¶ 94); owed a duty to furnish decedent with appropriate and competent medical, skilled nursing, rehabilitation, therapy and custody care services (*id.* at ¶ 95); and owed the numerous duties set forth in paragraph 96. Significantly, as Plaintiff points out in his brief, many of the above duties derive from affirmative duties that are imposed on nursing home administrators pursuant to 49 Pa. Code § 39.91(1), which sets forth standards of professional practice and professional conduct for nursing home administrators.[9]

---

[9] Specifically, Section 39.91(1) provides, in relevant part:

Moreover, the district court's decision in *Tanay*, although not directly on point or binding, is instructive. In that case, the district court concluded that a public policy

---

(1) *General management.* A nursing home administrator shall:

(i) Develop policies which govern the continuing care and related medical and other services provided by the facility which reflect the facility's philosophy to provide a high level of resident care in a healthy, safe and comfortable environment.

(ii) Evaluate the quality of resident care and efficiency of services, identify strengths and weaknesses and set in place measures for improvements where necessary, and evaluate progress and institute appropriate follow-up activities.
. . .

(iv) Maintain open lines of communication with the governing body, department heads, facility staff and its residents to assure resources are properly allocated and that resident care is maintained at a high level.
. . .

(3) *Personnel management.* A nursing home administrator shall:

(i) Implement personnel policies and procedures which define job responsibilities, accountability and the performance appraisal process. Personnel policies emphasize the importance of the health care team in the delivery of quality resident care.

(ii) Assure that a formal program is in place to provide for the recruitment, hiring and development of competent department managers and other facility staff.
. . .

49 Pa. Code § 39.91(1) & (3).

exception existed to the employment-at-will doctrine, which precluded dismissal of plaintiff's wrongful discharge claim. 810 F.Supp. 2d at 740-41. The court's finding of a public policy exception was predicated on the fact that the nursing home was statutorily required to hire a licensed, registered administrator who was responsible for overall management of the facility, pursuant to 28 Pa. Code § 201.18(e). There, the court noted that the plaintiff, who was the administrator, was required, pursuant to 49 Pa. Code §39.91(1) to develop policies that provided a high level of resident care in a safe environment, evaluate the quality of resident care, identify strengths and weaknesses, institute appropriate follow-up activities, and maintain open lines of communication with the governing body. 810 F. Supp. 2d at 740. As such, the court found the administrator had an affirmative statutory duty to ensure the safety of the residents and employees of the nursing home. *Id.* at 741.

Similarly here, the Court sees no reason why Plaintiff cannot predicate its tort claims on the affirmative duties imposed on nursing home administrators by Section 39.91(1) and those set forth in the Complaint in establishing that Ms. Mallonee owed a legal duty of care to the residents of the Facility. It is not necessary, as the Entity Defendants argue, that the Complaint allege that Ms. Mallonee violated the Pennsylvania Nursing Home Administrator Licensure Act, or even reference the Act, as Plaintiff is not seeking relief under that Act. Rather, Plaintiff is advancing common law tort claims, and the court may certainly turn to other legal authority for determining whether a legal duty of care was owed to the decedent. *See Tanay, supra.*

Thus, given this Court's finding above that Plaintiff may assert a negligence cause of action against Ms. Mallonee individually for her personal participation in the alleged tortious conduct, and the Pennsylvania Supreme Court's decision in *Scampone* indicating that a negligence claim can be brought directly against a nursing home if the plaintiff can establish that the nursing home owed plaintiff a duty of care, this Court cannot say that the Pennsylvania courts would adopt a categorical rule prohibiting negligence actions against nursing home administrators. Rather, this Court predicts that the Pennsylvania Supreme Court would follow the same approach it endorsed in *Scampone* and would allow a negligence action against nursing home administrators if the plaintiff can establish that the nursing home administrator owed a duty of care to its residents. The Entity Defendants do not point to any Pennsylvania or Third Circuit case law that suggests to the contrary.

Therefore, in light of the affirmative duties imposed on nursing home administrators by 49 Pa. Code § 39.91(1), the duties set forth in the Complaint, and the important social policy behind these duties of protecting the health and safety of the patients who have surrendered themselves to the custodial care of the nursing home, it is possible that a court would find that Ms. Mallonee, as the nursing home administrator, owed a legal duty of care to the decedent. Although Plaintiff's tort claims against Ms. Mallonee may not succeed ultimately, ultimate success is not required. Rather, all that is required is a slight possibility of a right to relief. The Entity Defendants have failed to point to any binding authority which would allow this

Court to conclude that Plaintiff has no right to relief on his negligence claim against Ms. Mallonee.  Having failed to do so, the Court's jurisdictional inquiry must end.[10]

    **D.**    **Conclusion**

    Accordingly, the Court finds that Plaintiff has stated a colorable negligence claim against Ms. Mallonee, and therefore, the Entity Defendants have failed to meet their heavy burden of persuading the Court that Ms. Mallonee, the non-diverse employee, was fraudulently joined in this action to defeat diversity jurisdiction.  Therefore, the Court finds that it lacks subject matter jurisdiction over this matter and recommends that Plaintiff's Motion to Remand be granted and this case be remanded forthwith to the Westmoreland County Court of Common Pleas.

    In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto.  Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto.   Failure to file timely objections shall constitute a waiver of any appellate rights.

Dated:   January 23, 2017

BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

---

[10] The Court need not consider whether Plaintiff has stated a colorable breach of fiduciary duty claim against Ms. Mallonee, in light of its finding that the Complaint states a colorable negligence claim against her.